The next argument is in Appeal No. 05-3265, Theus v. Merit System Protection Board. Mr. Dickinson, welcome, and we're ready to proceed as soon as you can be ready. Good morning, sir. Good morning. My name is Hop Dickinson. I'd like to recognize my partner, Carrie Arnett. Justice is not served by denying Ms. Theus' jurisdiction in this case. She started her employment with FAA in August 1991. We know the facts, Counsel, and of course justice is the ultimate goal of the legal system. But on the other hand, the panel is required to follow prior panel holdings. And it appears to me that your two principal contentions are foreclosed by prior holdings of panels of this Court in Antolin and Thompson on the one issue and Forrest on the other issue. And I think it's fair to say that we are without authority to ignore those precedents. We must follow them even if we don't think they're sound. And so I'm struggling to understand how you think we have power to accept your contentions. Can you somehow distinguish those three Federal Circuit cases? I don't think, I don't think there's ever been any kind of decision thus far that directly addresses interpretation after the Ford Act, the interpretation of the employee in the context of the section 401-22-G3. The general definition of the employee comes to mind and that pursuant to prior decisions of Allen and Dieffenderfer, based on those decisions that G-1, G-2, those subsections would have to be construed strictly and that there are no exceptions including 75-11. The only way that there is some reconciliation is after the Ford Act was enacted is 71-71, in which if the 71-71 would be read into G-3, it would be too narrow because it has to still reconcile with the H&I. H&I... the rights of FAA employees beyond what they enjoyed in the early 90s, then that's one thing. The other view of the effect of the Ford Act is that it simply restored MSPB rights to FAA employees so that they had the same rights, not broader rights, not narrow rights, but the same rights that they had enjoyed in the early 90s. Now, if the second view of the Ford Act is correct, then how can you escape from Antolin because it seems to me clear as quoted by the government's counsel in the red brief that Antolin says and holds that the basis of jurisdiction for the board over a removal case is not 77-01, but it's 77-12, which specifically says there's board jurisdiction for an adverse action called a removal and several others not relevant here. This is a removal case. So Antolin seems to hold that board jurisdiction in a removal case comes not from 77-01 or at least not 77-01 alone, but from 77-12. 75-12. Pardon me, 75-12. And the government argues that since 75-12 is necessarily implicated to grant jurisdiction at all working in tandem, you might say with 77-01, that similarly 75-11 also must be implicated, neither being mentioned in the Ford Act, to be sure. And therefore, we have to follow the definition of employee that's in 75-11. And I have a hard time seeing any flaw in that position of the government once I acknowledge that I'm bound by the holding in Antolin, which I think I am. So unless you can get around Antolin or convince me that the Ford Act didn't restore but broadened FAA employee rights and gave FAA employees rights that no other departmental employee has, then I don't see how I can rule in your favor. So you only have two escape routes that I can suggest in the second route, which is the expansion of the rights previously held by the employees. Okay. Now, where in the legislative history is there any indication that the Congress intended to both restore and expand FAA employee rights so that after the Ford Act became effective, they would have greater rights than the employee of any other department? I'm not able to pinpoint to the legislative history. However, I am pinpointing, too, when you look at H&I, where those provisions talk about the major adverse personnel actions, that would be distinguishable from adverse actions provided in G3. So under the definition of major adverse personnel actions, that would include not only the removal actions, but other actions that are something less than the removal actions, such as reduction in pay or grade. So just by the on the face of the statute themselves that you have to reconcile G3 along with H&I. Under H&I, basically, an employee has right to go three different routes, the grievance procedure, the internal procedure, and G3, the right to go to MSPB. If the route to MSPB is too narrowly construed, as suggested, too narrowly within the context of Section 7511, then there would be a gap in the statutory construction in which under H&I employees would have something less than election to go right to appeal one of the three approaches. The problem I think you have, however, is that H says you can take an appeal to the board under G3, and G3 says that you can appeal any action that was appealable to the board under any law, rule, or regulation as of 1996. It doesn't say what law or rule they're referring to. So what you're raising is a removal problem. Well, in order to make a removal an appealable action, you've got to go back to 7512. Now 7512 is not mentioned in the Ford Act. Only 7701 to 7703, which are procedural. There's nothing in those sections that tell you what the substantive content of an appealable action is. So in order to find, you can't be up here claiming a removal is an appealable action unless you've got a law or rule or regulation that makes it one. And in order to find that law, rule, or regulation, I have to go to 7512. Otherwise, you don't even have an appealable action, I don't think. So if you argue, you see, in order to get you this far, you've got to incorporate 7512 and 7513 into your theory. And that's what throws you into the employee definition problem. Let me put it this way. What rule or regulation are you appealing from? Because the statute makes it very clear, you have to have something that was an action that was appealable to the board under some law back in 1996. What is the law that you're appealing about? Well, I think the reading is that looking at G3, an employee of the administration may submit an appeal to the MSPB. And right there, I'm suggesting that right there in the face of the statute, an employee has the right to go to the MSPB. That raises the question. In the second phase of the clause that says what answer is given by the any action that was appealable on March 31, 1996. March 31, 1996 only refers back to the any action. So your position is 7512 applies and gives you the right of appeal over a removal, but 7511 that defines employee, you say doesn't apply because the Ford Act itself has a different notion of employee. Then under your definition of employee, if I go to work for tomorrow for the FAA and the next day I get fired because I was on the payroll for one day, I'm an employee and have a right to appeal the removal at the very start of my tenure, right? I think so. Particularly with Ms. Dears, she was an employee when DOT Act was passed. She was an employee when the Ford Act was passed and she was an employee and she should have right to go. But under your sense of employee that the rights attach on the day of hiring, the day I go on the payroll, then an FAA employee who's still in a probation period would have appeal rights when no employee of any other department who's on a probation period would have appeal rights. And so you're suggesting to us that with no discussion, Congress gave vastly broadened rights to FAA employees without ever saying so in the statute. Well, it seems so under Facebook. As for the, under the Section 7511A1C2i, there's in the appendix pages, date stamp 103, 104, and 108, there's an exhibit there shows that effective dates back 1996 to 1997 period, if she was, she had the position. Yeah, well, there's no dispute at all. The facts, the government agrees with her employment history, every position, the dates and everything else. You and the government agree entirely on that. And we are suggesting that government is wrong here because they're skipping and the interpretation of it leaves out in their regulations their word without a break. They appear to be concentrating. Well, you know, I'm not really too concerned myself with what the government's arguing. It seems to me that what I have to follow is the holding in forest. And the to see if it's tackable onto the present position to get you beyond the two year period. But you can only do that if the prior position is the same or similar. And I think we all agree that a secretarial position is not the same or similar to an ATA position. And they're the two positions that she held at the last two steps of her tenure. So if she can't tack the secretarial position onto her ATA position from which she was removed, then she can't make the two year requirement and she doesn't qualify as an employee. I'm reading current continuous service in a manner without break in a manner such that she has been employed since 1991 without a break. We all agree there was no break. The government agrees. We agree. You agree. The problem is the case rejects your interpretation of what current continuous service means. And I'm controlled, I think, by the forest case, whether it's right or wrong. So it seems to me forest utterly shuts the door on the very argument that you're making. I'm not sure the forest case dealt with interpretation of same or similar positions in that. Once again, the ATA position was the context of the statute, similar positions, meaning that there has to be at least more than one position. So positions meaning there are two ATS positions. Is it your argument, Mr. Dickinson, that the forest case has no application here because the definition of employee that was being talked about in forest isn't the appropriate definition? Is that what you're arguing? I'm saying that the current continuous service applies to the time period and it should take into account two ATA positions. So you're really saying that you look at the date of removal and you go back during the entire career of the person. And if you find that any time previously, even at their very first assignment, they were an ATA, let's say for a year, then you can tack on that one year ATA at the beginning of the career with the one year or so at the end of the career of your client who was removed from an ATA position. And you say, therefore, I have more than two years in the same or similar position. Yes. Provided that works because provided they were similar, same or similar. Well, they're identical. They're identical. So we don't even have to quarrel about similar. The ATA is ATA, whether it's in San position, but forest seems to say, no, you can't skip back to the beginning of the career for tacking. You can only look at the job or jobs that immediately preceded the position from which the petitioner was removed. In this case, that would be the secretarial position that preceded the ATA position from which she was removed. So it seems to me that the case is wrong. Then your honor, I'm suggesting that maybe so, but our quandary is right or wrong. We're bound by it. Can I ask a question going back to the point you made earlier that to summarize the point, I think accurately, you're saying that the Ford act incorporates the adverse action that was incorporate the definition of employee, correct? So that anyone who is a common law employee and who suffers an adverse action, that is one of the adverse actions that could otherwise be taken to the board would be entitled under the Ford act to appeal. Now, would that apply, for example, to political appointees? Someone who would not have a right of appeal to the board, would a political appointee within the FAA have a right under your view of the Ford act schedule, but it's a schedule C, I guess, employee to appeal to the MSPB. It'd certainly be a common law employee. I mean, the secretary of transportation would be a political appointee and an employee, but could the secretary of transportation go to the MSPB if the president removed him? It appears so because once again, because your honor, that the FAA has uniquely apart from the other federal agencies have its own system. Okay. All right. Thank you, sir. Mr. Gager. May it please the court. On the, there's two issues here. One is the applicability of 7511 to FAA employees. And the other alternative argument made by the petitioner is that if 7511 does apply, then she is an employee under 7511 A1C. On that first argument, the argument that 7511 doesn't apply, we sent a letter to the court under rule 28 J bringing to the court's attention, new precedent, recent precedent that had come out after we filed our brief. It's our position that that decision is actually dispositive of the first issue because of that. This is the core of that. But the problem I have with core Deshi with all due respect to the brilliance of the that decided it, they really never addressed the issue. They just assumed it. Didn't they? I mean, it's a one sentence statement as of March 31, 1996, an employee may appeal his or her removal action. The MSP under five us code 75, 12, one 75, 13 D accordingly TSA personnel. And that's going to be the same rule for FAA personnel, TSA personnel would meet the definition of employee under five us code 7511 may appeal his or her removal action to the MSPB period. End of discussion. What are we to make of that? Well, it's clear that the court had to look at whether or not 7511 applied in order to get to that issue, the jurisdictional issue. In addition to the language that you read, there's a footnote that at least indicates to me that the court not only looked at the language of the Ford Act, but also looked at the legislative history and concluded, as every other court has concluded that has examined the Ford Act, that the intent of Congress in passing that legislation was to restore appeal rights to FAA employees. There's no indication anywhere that Congress intended to expand appeal rights to new categories of employees, such as not such as probationary employees, for example, or someone had been on the job for a day. Something more would have been in the Ford Act to to express that type of expansion of appeal rights. And this decision is consistent with other decisions. We, in our brief, which came out before, which was filed before Cordesia, we cited a DC circuit case, which had the same conclusion that that the purpose of the Ford Act was to restore appeal rights, as they were on March 31st, 1996. So it's our view that Cordesia is binding, it's binding on the on the board and on this panel, on the issue of whether or not 7511 applies in determining FAA appeal rights. With respect to the alternative argument on current continuous service, by both regulation and case law, it's clear that in determining current continuous service for an accepted service employee who is not a preference eligible, you look at the last two years prior to the removal and see what type of employment that employee had. Now, it could be that during those last two years, there were more than two positions. That's an issue that the petitioner brought up. There could be three or four positions. It doesn't matter than the number of positions. You're saying all that matters is you go backward from the date of the removal two years only. Right. Now, the regulation simply says period of employment or service immediately preceding an adverse action. So how do you translate that language into you go back from the date of removal two years and not one day more? That's right. Because the regulation is only defining the phrase current continuous service. In the statute, in this section of the statute, two years is actually in the statute itself, and that modifies along with current and continuous, the word service. So that all has to be read together. In other sections, it's one year. But in this particular section, it's two years. So we go two years back. And then there's the one final point I would make that even if you applied the competitive service rule on tacking, which the petitioner attempted to do in her brief, in our position it doesn't apply. But even if you did apply the competitive service rule on tacking, the petitioner still cannot tack that prior service from 1996. It's just too distant, even under competitive service rules. But certainly under this statutory language for an accepted service employee who's a non-preference eligible, that service is too distant to be current service. Unless there are any other... Why? Under the statutory... I mean, is the concern that the person has forgotten how to do it? As if they've really never had the ATA job at a previous period? Or is the concern that it's just bothersome for the government to have to trace back more than two years into the person? I think the policy consideration there is not that the person's skills have changed, but that the position may have changed. That things happen that change positions. In the field of aviation, of course, the big change... Well, but the burden in order to allow tacking is on the petitioner. They have to show that it's the same position or a similar position. Now, that presumably implicates the job description and the actual duties. So, if the title is the same, but the duties have changed, then obviously the government will say, oh, no, no, no, no, that's not the same or similar. Yeah, it had the same title, but the duties were totally different. Therefore, they cannot tack. So, I don't see how you get to this idea that anything more remote than two years from the day of the removal is off the table, can't be considered for tacking. From the statutory language itself, two years of current continuous service. If you just said two years of current service, I think that by itself would make clear, but two years of current continuous service mean there can't even be a break between these positions. And so that's the statutory language itself directs that... Continuous is the word then. Current is the word that I'm focusing on. Of course, it all has to be read together. And the whole purpose of the section needs to be considered. Two years of current continuous service in the same or similar position. In this case, petitioner doesn't have that. Well, Mr. Dickinson agrees that if your definitions prevail, the facts can't be proven that would qualify the petitioner. So, he fights over whether you're correct that the reachback effect is limited to two years. Unless there are any other questions, I won't use my entire time. Thank you. Mr. Dickinson, we'll give you some rebuttal time, two minutes if needed. Just on the tacking on the competitive service, Your Honor, the statutory wording appears to be precisely the same. So, there's no reasonable difference between the competitive service tacking and the accepted service tacking. The wordings appear to be the same. All right. We thank both counsel. We'll take the appeal under advisement.